# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SUPERIOR FENCE AND CONSTRUCTION, INC.,** | Case No. 3:25-cv-1400-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MCGRAW ENTERPRISES, LLC**, | |
| Defendant. | |

Scott E. Davis, Caroline L. Desmond, Jeffrey S. Love, Derrick W. Toddy, and Kevin M. Hayes, KLARQUIST SPARKMAN LLP, One World Trade Center, 121 SW Salmon Street, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

Steven T. Lovett, Elliott J. Williams, Kaitlyn K. Lindaman, and Brian D. Bollt, STOEL RIVES LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Superior Fence and Construction, Inc. ("Superior Fence") sued McGraw Enterprises, LLC ("McGraw") in the Circuit Court of the State of Oregon for the County of Clackamas, alleging unfair competition and dilution of trade name in violation of Oregon law. Plaintiff later amended its complaint to add claims under Oregon and Washington law, including common law trademark infringement, violation of Oregon's Unlawful Trade Practices Act, and a request for

declaratory judgment under Oregon Revised Statutes ("ORS") § 28.010. Defendant removed the case to federal court. Now before the Court is Plaintiff's motion to remand. ECF 11. For the reasons stated below, the Court grants Plaintiff's motion.

## STANDARDS

A civil action may be removed from state court to federal court if the federal district court would have had original, subject matter jurisdiction over the case. 28 U.S.C. § 1441(a). When the initial pleading was not removable but the complaint is amended to add a basis for subject matter jurisdiction, to be timely, a notice of removal must be filed within 30 days of receipt of a "copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Subject matter jurisdiction may be based on either diversity jurisdiction or federal question jurisdiction. 28 U.S.C. §§ 1331, 1332. The presence or absence of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *cf. Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (noting that "removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings" and that "[i]f no ground for removal is evident in that pleading, the case is 'not removable' at that stage"). For an action to be removed on the basis of federal question jurisdiction, the complaint must establish either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of substantial questions of federal law. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-11 (1983).

A motion to remand is the proper procedure for a plaintiff to use when challenging removal. 28 U.S.C. § 1447; *see also Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1244

(9th Cir. 2009). The party seeking removal bears the burden of establishing by a preponderance of the evidence that removal is proper. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). "This burden is particularly stringent for removing defendants because '[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'" *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74 (9th Cir. 2017) (quoting *Moore-Thomas*, 553 F.3d at 1244); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (noting the "strong presumption" against removal jurisdiction).

## BACKGROUND

This case concerns an intellectual property dispute over the phrase "Superior Fence." Plaintiff, Superior Fence, is an Oregon company that has provided residential and commercial fencing and related services since at least 1992 in the Portland Metro[1] area. Am. Compl. ¶¶ 3, 4. Superior Fence alleges that McGraw, an Oregon LLC, began doing business as "Superior Fence and Rail of Portland Metro" in July of 2023 and began marketing fencing installation services in the Portland Metro area in violation of Superior Fence's common law trademark rights. *Id.* ¶ 6.

Two lawsuits have arisen from this dispute, and the procedural history of both are relevant to the pending motion. Superior Fence first sued McGraw in Clackamas County Circuit Court in September 2024, alleging unfair competition and dilution of trade name in violation of Oregon law. ECF 1-1 at 1-4 (Complaint). McGraw answered and asserted several affirmative defenses, including that it has "prior and exclusive rights to use 'Superior Fence and Rail' for fencing services in the Portland Metro area as a licensee of the owner [of] the federal trademark

---

[1] Superior Fence defines "Portland Metro area" to include Multnomah, Washington, and Clackamas Counties in Oregon state and Clark County in Washington state. Am. Compl. ¶ 4.

registration for SUPERIOR FENCE & RAIL, INC. (Reg. No. 3,873,318), with priority by federal statute to March 31, 2010." *Id.* at 9 (Answer).

Several months later, in January 2025, Lynx Franchising Intellectual Property, LLC ("Lynx") sued Superior Fence in the United States District Court for the District of Oregon. *See id.* at 161-75 (*Lynx* Complaint); *see also Lynx Franchising Intell. Prop., LLC v. Superior Fence & Const., Inc.*, No. 3:25-cv-150-HZ (D. Or. Jan. 28, 2025). In that matter, Lynx alleged that it owned "common law and federally registered trademark rights in the marks "SUPERIOR FENCE & RAIL®" and "SUPERIOR FENCE & RAIL, INC.®" (collectively, the "Marks") for installation of fences," and that McGraw was its authorized licensee. ECF 1-1 at 163 ¶¶ 9, 14-16. Against Superior Fence, Lynx sought injunctive and monetary relief for trademark infringement and unfair competition under both federal law and common law and a declaration that "Lynx's federal trademark rights in the Marks have priority over any rights of [Superior Fence] in the phrase 'Superior Fence' as asserted against [McGraw] in state court." *Id.* at 168-73.

In the federal action brought by Lynx, Superior Fence filed an answer and counterclaims on April 14, 2025.[2] *Id.* at 171-212 (*Lynx* Answer). In its answer, Superior Fence stated that it "admits that [the Lanham Act] provides that a trademark registration may be *prima facie* evidence of certain things, but it is subject to conditions, limitations, defenses and defects, including some that apply here," including that Superior Fence "has prior trademark rights in . . . the Portland Metro area, due to its substantial and continuous use." *Id.* at 174 ¶ 18. Immediately after describing how its "prior trademark rights" could limit a federal registration, Superior

---

[2] Superior Fence also filed an amended answer and counterclaims on May 5, 2025, and a second amended answer and counterclaims on May 16, 2025. *See Lynx Franchising Intell. Prop., LLC v. Superior Fence & Const., Inc.*, 3:25-cv-150-HZ (D. Or. Jan. 28, 2025), ECF 12 (Amended Answer); ECF 15 (Second Amended Answer).

Fence cited several provisions of the Lanham Act. *Id.* (citing 15 U.S.C. § 1115(b)(3), (4), (5) and (9); 15 U.S.C. §§ 1064(3) and 1065; 15 U.S.C. § 1057(c)(1)).[3]

On April 30, 2025—just 16 days after answering Lynx's federal suit—Superior Fence filed a motion to amend its complaint in its state court case against McGraw. *Id.* at 17-18. Accompanying its motion to amend, Superior Fence attached a proposed amended complaint that showed in redline the proposed changes from its original complaint. As relevant here, Superior Fence sought to add two claims under Oregon and Washington law—common law trademark infringement and violation of Oregon's Unlawful Trade Practices Act—and a request for declaratory relief under ORS § 28.010, stating that Superior Fence "has common law trademark rights in the Portland Metro area in its Superior Fence Trademarks that are prior and superior to any rights of [McGraw] to use any business name or mark in the Portland Metro area that include the words 'Superior Fence.'" *Id.* at 38-39. On May 29, 2025, McGraw filed its opposition to Superior Fence's motion to amend. *Id.* at 64-76.

On June 6, 2025, McGraw filed a motion for judgment on the pleadings or, in the alternative, to stay proceedings pending the resolution of Lynx's federal suit. *Id.* at 78, 89. McGraw moved for "judgment on the pleadings dismissing this action with prejudice," arguing that "all of the trademark rights asserted by [Superior Fence] in this action are the subject of an ongoing and pending challenge . . . in a federal action," and Superior Fence has "failed to join an indispensable party," Lynx. *Id.* at 79. A few days later, briefing concluded on Superior Fence's motion to amend. The state court scheduled a hearing on Superior Fence's motion to amend for June 30, 2025. Because McGraw's reply brief in support of its motion for judgment on the

---

[3] This paragraph is replicated in the amended answer and second amended answer. *See* ECF 1-1 at 221 ¶ 18, 297 ¶ 18.

pleadings and alternative motion to stay was due on July 3, 2025, which was after the hearing

date on the motion to amend, McGraw asked the state court to postpone the first hearing and hear

both motions concurrently.

The hearing on Superior Fence's motion to amend, however, proceeded as scheduled on

June 30, 2025, and the state court suggested that it was expecting to hear argument on both

motions. At that hearing, the state court orally granted Superior Fence's motion to amend. The

court also directed the parties to prepare for the court a written order granting the motion to

amend. McGraw requested an extension of time to file its reply brief in support of its motion for

judgment on the pleadings.

The parties submitted their proposed order on July 1, 2025. The next day, on July 2nd,

McGraw submitted a written request for an extension of time to file its reply brief, explaining

that its "Motion [for judgment on the pleadings] relates to the operative complaint, which was

just amended by granting [Superior Fence's] Motion to Amend." *Id.* at 130. McGraw requested a

"one-week extension" to "facilitate [its] preparation of the reply in view of the amended

complaint." *Id.* at 130-31.

On July 8, 2025, the state court entered the parties' order granting Superior Fence's

motion to amend. *Id.* at 133. McGraw, having been granted its extension motion, filed its reply

brief in support of its motion for judgment on the pleadings on July 10, 2025. In that brief,

McGraw "maintain[ed] its Motion against the [amended complaint]" and continued to argue for

dismissal under the same bases as it previously raised: that the state action was duplicative of the

federal action, and alternatively that Lynx was an indispensable party. *Id.* at 383. McGraw also

reiterated its alternative motion to stay pending resolution of the federal case brought by Lynx.

PAGE 6 – OPINION AND ORDER

The next month, on August 4, 2025, the state court held a hearing on McGraw's motion for judgment on the pleadings and alternative motion to stay. Superior Fence argued that a stay was unnecessary because any judgment against McGraw would be binding on Lynx and Superior Fence expected to "beat the federal registration," if Superior Fence prevailed on its new claim for declaratory relief. ECF 14 at 4; *see also* ECF 15 ¶3, Ex. A at 33.[4]

Three days later, McGraw filed its notice of removal in this Court. ECF 1. McGraw stated that Superior Fence "intends in its Fifth Claim [requesting declaratory relief] to seek a judgment that its common law rights are prior and superior to an incontestable trademark registration" and that the "right of priority sought in Plaintiff's Fifth Claim . . . is controlled by federal statute and common law." *Id.* ¶¶ 2, 6. McGraw also referenced Superior Fence's statement made in the August 4th hearing. *See id.* ¶ 3 ("While Plaintiff's asserted rights arise under common law, the restriction sought by Plaintiff against a federal registration—to 'beat the registration' as stated by Plaintiff's counsel— is controlled by federal [law].").

## DISCUSSION

### A. Procedural Grounds for Remand

Superior Fence argues that McGraw's removal was procedurally defective on two independent grounds, either of which requires remand. As one argument, Superior Fence asserts that McGraw failed to remove within the time limits proscribed by 28 U.S.C. § 1446.

---

[4] Superior Fence objects that the transcript of the August 4th hearing (ECF 15, Ex. A) is inadmissible because it is not "certified or official in any way," and the audio recording of the same (ECF 15, Ex. A-1) is also inadmissible because it is "insufficiently authenticated and certified" under FRE 901(a). *See* ECF 16 at 26-27. The Court does not rely on the transcript or audio recording of the August 4th hearing to issue its Opinion and Order, so it need not reach the objection. The quoted statement ("beat the federal registration") appears in McGraw's notice of removal (ECF 1), briefing (ECF 14), and was discussed by the parties during the hearing on Superior Fence's Motion (ECF 20). At no time has Superior Fence disputed that it made that statement.

Alternatively, Superior Fence contends that McGraw has waived its right to remove by continuing to litigate on the merits in the state court action. Superior Fence timely raised these procedural grounds for remand, *see* 28 U.S.C. § 1447(c), but for the following reasons the Court rejects them on the merits.

### 1. Timeliness of Removal

Superior Fence argues that McGraw's removal is untimely because it occurred more than nine months after receipt of the original complaint. *See* 28 U.S.C. § 1446(b)(1). This argument is without merit. A party removing an amended complaint must "explain why the original complaint had not been removable." *See Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249, 1254 (9th Cir. 1989). McGraw explains that the original complaint did not contain the Fifth Claim, which seeks a declaration that Superior Fence has trademark rights that are prior and superior to all rights held by McGraw. It is this new request for declaratory relief, McGraw contends, that invokes federal question jurisdiction. In reply, Superior Fence asserts that the amended complaint merely "leave[s] open the possibility that Defendant will attempt to prove that it has prior rights based on a license to a federal registration," that the "same possibility was presented by the original complaint," and that Defendant's federal defense does not justify removal under either the original or the amended complaint. *See* ECF 16 at 18-19. Superior Fence may disagree with whether its new claim for declaratory relief invokes federal question jurisdiction, but that disagreement is an insufficient basis for rejecting the timeliness of McGraw's removal.

The parties' primary dispute regarding timeliness of removal concerns the date when McGraw's statutory 30-day removal window began under 28 U.S.C. § 1446(b)(3). Under that provision, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Superior Fence argues that the 30-day removal period began on June 30, 2025, the date when the state court orally granted Plaintiff's motion to amend or, in the alternative, July 1, 2025, the date when the parties filed their joint proposed amendment order. Under either date, McGraw's August 7th notice of removal would be untimely. McGraw, however, argues that the 30-day removal window began on July 8, 2025, the date when the state court entered the parties' proposed amendment order, thereby granting in a written order Superior Fence's motion to amend. As explained below, the Court agrees with McGraw and finds that removal was timely.

Courts generally have taken one of three approaches in determining when the 30-day period begins when an amended complaint provides the basis for removal: (1) when the motion to amend is granted; (2) when the motion to amend is served; or (3) when the amended complaint is filed. *See Jensen v. State Farm Fire & Cas. Co.*, 2022 WL 17658223, at *2-4 (D. Or. Aug. 1, 2022) (describing approaches; collecting cases). Because the Ninth Circuit had not yet expressly endorsed one of these approaches to the exclusion of the others, this Court in *Jensen* surveyed case law in this circuit and concluded that most district courts in the circuit follow the first approach. *Id.* at *2. This Court then endorsed the first approach, interpreting § 1446 to mean that the "30-day window begins on the date that the state court grants the motion to amend the complaint." *Id.* at *4.

Superior Fence argues that, because the state court orally granted its motion to amend during the parties' June 30th hearing, *Jensen* implies that the 30-day time frame began on June 30th. *Jensen*, however, does not stand for that principle. The plaintiff in *Jensen* did not file a motion to amend; instead, the parties negotiated a stipulated order. *See id.* In that case, the defendant's notice of removal was filed more than 30 days after the parties' filed their proposed stipulated order, which the state court entered. *Id.* Thus, despite endorsing the general approach

that the 30-day window begins when a state court grants a party's motion to amend, the Court's ultimate holding—that the defendant's notice was untimely, *id.*; *see also id.* at *4, n.3—was narrow. Thus, *Jensen* says nothing about whether a court's oral ruling will trigger the running of the 30-day period.

To answer this question, *Dietrich v. Boeing Company*, 14 F.4th 1089 (9th Cir. 2021), is instructive. In that case, the Ninth Circuit "adopt[ed] a more explicit standard" for when the "ground for removal [can] first be ascertained from an amended pleading, motion, order, or other paper" under § 1446(b)(3). *Id.* at 1091, 1093. Under *Dietrich*, the 30-day "clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" *Id.* at 1091; *see also id.* at 1093-94. Thus, this test has two requirements: there must be a "paper," and that paper must provide unequivocal clarity and certainty.

As to the requirement of a "paper," the Ninth Circuit explicitly held that "the plain meaning of 'other paper' does not cover oral testimony . . . because 'paper' is defined as 'a written or printed document or instrument.'" *Id.* at 1095 (quoting *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 608 (5th Cir. 2018) (cleaned up)).[5] Regarding the second requirement, a

_____

[5] Although the Ninth Circuit interpreted the plain meaning of the phrase "other paper," the Court's paper requirement also applies to the other enumerated options in § 1446(b)(3). *See Dietrich*, 14 F.4th at 1091, 1093. To read § 1446(b)(3) otherwise would be inconsistent with traditional tools of statutory interpretation and the authority cited in *Dietrich*. The text of § 1446 states that a notice of removal may be filed within thirty days after "receipt [of] . . . a copy," implying that whatever provides notice of the possibility of removal—be it an "amended pleading, motion, order, or other paper"—must be a physical object. Additionally, Congress's use of the phrase "or other paper" at the end of a list implies that all aforementioned items are also "paper." *See generally Fischer v. United States*, 603 U.S. 480, 487 (2024) (describing how *noscitur a sociis* and *ejusdem generis* are relevant to interpreting an "otherwise" clause in a federal statute). Further, the Ninth Circuit cited *Morgan*, 879 F.3d 602 (5th Cir. 2018), for its definition of "paper" *and* its adoption of the unequivocal clarity and certainty test. There, the Fifth Circuit observed that "under the *ejusdem generis* canon of statutory construction, 'other papers' should be read similarly to 'amended pleading, motion, order.' All three of those items are generally reduced to a writing—though not always. All, however, are modified by 'a copy

paper provides "unequivocal clarity and certainty" if it "*clearly* state[s]" the grounds for removal; in other words, "ambiguous or misleading" information is insufficient to trigger the running of the 30-day timeframe. *See id.* (emphasis in original). As the Ninth Circuit explained, the "bright-line approach" best adheres to the principles announced in *Harris*, which "include bringing certainty and predictability to the process of removals; avoiding gamesmanship in pleading; and avoiding the specter of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Dietrich*, 14 F.4th at 1091 (cleaned up).

The state court's oral ruling at the June 30th hearing is not a "paper" within the plain meaning of § 1446(b)(3). It thus cannot serve as a basis for beginning the 30-day removal period.

Superior Fence argues in the alternative that the parties' stipulated amendment order granting Superior Fence's motion for leave to amend started the clock on July 1, 2025, the date it was filed. The proposed amendment order is a paper for purposes of § 1446. Thus, the relevant question is whether the *filed*, written version of the parties' stipulation gave McGraw "unequivocal clarity and certainty" that the case was removable such that the 30-day period began on July 1, 2025. McGraw responds that the relevant date is July 8, 2025, the date that the state court entered the order.

---

of,' which emphasizes the written nature of these three documents." *Morgan*, 879 F.3d at 609 (citation omitted). The principles endorsed by *Dietrich* confirm that the "paper" requirement applies to any document enumerated in § 1446(b)(3).

*Dietrich* narrowed its discussion to the "other paper" portion of § 1446 because that case involved deposition testimony. The court had previously held that an oral "response to deposition questions can constitute [an] 'other paper' within the meaning of section 1446(b)," *see Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886-87 (9th Cir. 2010), and *Dietrich* explicitly rejected that proposition, *see* 14 F.4th at 1095.

As both parties note, the Court was presented with, but did not answer, this question in *Jensen*. *See* 2022 WL 17658223, at *4 n.3. ("The Court need not resolve whether date of the parties' stipulation, February 14, 2022, or the date it was signed and entered by the state court, February 17th, triggered the 30-day window because under either date Defendant's removal notice was untimely."). This question, however, is squarely presented here: if the filing of the proposed order is sufficient to start the 30-day timeframe, then McGraw's August 7th notice of removal is untimely.

Following the principles stated in *Dietrich* and *Harris*, the Court finds that the better approach is to calculate the 30-day timeframe from the date of entry by the court, not the date of the parties' filing. The date of entry is a "bright-line approach" that provides parties with "certainty" in calculating the removal period. *See Dietrich*, 14 F.4th at 1091; *Harris*, 425 F.3d at 697. To that end, the parties' amendment order here was only "proposed" on July 1, 2025. Until it became binding after entry by the court, *see State v. Rogers*, 340 Or. App. 625, 632 (2025), it theoretically could have changed. *Cf. Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189 (9th Cir. 2015) (rejecting the use of a "tentative ruling" on class certification to start the § 1446 clock and explaining that the "ruling had no jurisdictional effect precisely because it was tentative"). Moreover, any other approach could create anomalous results in cases in which proposals sit on a court's docket for longer than 30 days before entry. *See Sullivan v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998) (Posner, J.) ("Until the state judge granted the motion to amend, there was no basis for removal . . . . It would be fantastic to suppose that the time for removing a case could run *before* the case became removable[.]" (emphasis in original)).

Finally, Superior Fence argues that McGraw's reference to the court's oral ruling—specifically, calling the amended complaint the "operative complaint" in a July 2, 2025 filing—

amounts to an admission that the § 1446 removal clock began on the date of the hearing, or "no later than July 2, 2025." ECF 11 at 19. But McGraw calling the amended complaint "operative" does not make it so. Under Oregon law, "a trial court's oral ruling is not binding until reduced to writing and, unless executed in open court, is not effective until filed with the clerk." *See, e.g.*, *Rogers*, 340 Or. App. at 632 (quoting *State v. Sperry*, 149 Or. App. 690, 697 (1997)). When faced with a similar state law requiring written entry of oral rulings, the Sixth Circuit held that "the oral order in this case did not start § 1446(b)'s 30-day time period," and removal was timely because the defendant had removed within 30 days of entry of a written order. *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 410 (6th Cir. 2008) (explaining that "removal before the state court actually amends the complaint may have the anomalous effect that the removed case lacks federal jurisdiction at the time that it is removed."). The same wisdom governs here.

The paper that gave McGraw "unequivocal clarity and certainty" of the possibility of removal was the operative order granting the motion to amend. The 30-day removal period began when the order was entered on July 8, 2025. Accordingly, McGraw's August 7th removal was timely.

### 2. Waiver of Removal Right by Conduct

Superior Fence also argues that McGraw, by its own conduct, waived its right to remove. A party "may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Resol. Tr. Corp. v. Bayside Devs.*, 43 F.3d 1230, 1240 (9th Cir. 1994). "A waiver of the right of removal must be unequivocal." *Id.* (quoting *Beighley v. F.D.I.C.*, 868 F.2d 776, 782 (5th Cir. 1989)). "In general, 'the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits.'" *Id.* (quoting same).

Superior Fence argues that, to the extent McGraw contends that the amended complaint made the possibility of removal apparent, McGraw nonetheless "chose to have the state court decide the merits of the Amended Complaint" by redirecting its motion for judgment on the pleadings to the amended complaint. The state court's denial of McGraw's motion constitutes a loss on the merits, Superior Fence contends, such that removal amounts to impermissible forum-shopping. McGraw counters that because Superior Fence "first revealed its intention to use its claims (against McGraw) to restrict Lynx's federal trademark registration at the August 4, 2025 hearing," there was no waiver—McGraw removed within three days of the hearing and did not file anything else in state court.

McGraw's arguments about timeliness and waiver appear, at first blush, contradictory. On one hand, McGraw argues that removal was timely because removal was accomplished within 30 days of the court's order granting the amended complaint. On the other, McGraw argues that it did not know about the possibility of removal until the August 4, 2025 hearing, when Superior Fence first represented that it sought to "beat the federal registration" with the Fifth Claim. Superior Fence focuses on that apparent contradiction and argues that "Defendant's Notice of Removal did not cite or reference the August 4, 2025 state court hearing," so "this Court should not consider anything about [it] to be a basis to deny remand." ECF 16 at 27. The Court notes, however, that McGraw discussed both the amended complaint *and* counsel's statements at the August 4th hearing in its notice of removal. *See* ECF 1 at ¶ 3 ("While Plaintiff's asserted rights arise under common law, the restriction sought by Plaintiff against a federal registration—to 'beat the registration' as stated by Plaintiff's counsel—is controlled by federal [law].") McGraw thus adequately preserved the August 4th hearing as grounds for removal.

McGraw emphasizes that on the August 4th hearing, Superior Fence "for the first time[ ] made clear that it intended, through its amended claims, to restrict Defendant's federal registration." ECF 16 at 18. McGraw thus argues that its litigation conduct prior to that hearing did not constitute waiver, because it was not "apparent that the case [was] removable" until after the August 4th hearing. *Id.* at 19 (quoting *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 790 (9th Cir. 2018)).

McGraw's argument that the order granting the amended complaint began the 30-day timeframe under § 1446 does not estop it from asserting that counsel's statements during the August 4th hearing served as the true basis for its removal.[6] Indeed, the standards for timeliness and waiver emanate from different sources of law—the former is statutory, while the latter is governed by common law. Because McGraw preserved its argument that counsel's statements served as the basis for removal in its notice, ECF 1, the Court does not find that McGraw unequivocally waived its right to remove by litigating in the state court before that basis arose. *See Bayside*, 43 F.3d at 1240.

## B. Remand for Lack of Subject Matter Jurisdiction

Superior Fence also argues that remand is required because the Court lacks subject matter jurisdiction. McGraw has the burden of establishing subject matter jurisdiction. *See Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

---

[6] In fact, McGraw could have, consistent with *Dietrich*, argued that the 30-day removal period under § 1446 began when it first received the transcript of the August 4th hearing. *See Dietrich*, 14 F.4th at 1095 (discussing how, when an oral statement provides the basis for removal, the transcript of the proceeding in which the statement was made can serve as the "paper" for purposes of § 1446). McGraw did not make that argument, however, so the Court does not evaluate timeliness under this measure.

1.  **Standards**

Subject matter jurisdiction is governed by the well-pleaded complaint rule, which requires that a federal basis for jurisdiction be established on the face of the complaint. *See Caterpillar*, 482 U.S. at 392. There is a "strong presumption" against removal jurisdiction, requiring the Court to remand if there are any doubts as to the existence of federal jurisdiction. *See Gaus*, 980 F.2d at 566; *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("The right of removal is entirely a creature of statute and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.' These statutory procedures for removal are to be strictly construed." (citation omitted)). Because both parties are Oregon companies, subject matter jurisdiction only can be proper based on a showing of federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1332.

There are two ways that a complaint implicating federal trademark law can invoke federal question jurisdiction. *Duncan v. Stuetzle*, 76 F.3d 1480, 1486 (9th Cir. 1996). First, federal jurisdiction exists when the "complaint establishes . . . that federal [trademark] law creates the cause of action." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). Second, when federal trademark law does not create the cause of action, "federal jurisdiction extends 'only to those cases in which . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal trademark law, in that federal trademark law is a necessary element of one of the well-pleaded claims.'" *Duncan*, 76 F.3d at 1486 (quoting *Christianson*, 486 U.S. at 809 (cleaned up)). "In addition, the plaintiff is the 'master' of her case, and if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal." *Id.* at 1485.

McGraw insists that Superior Fence's Fifth Claim for Relief[7] gives rise to federal question jurisdiction because it necessarily raises a substantial question of federal trademark law. The Supreme Court has stressed, however, that this second category of cases is a rare exception to the general rule that federal-question jurisdiction exists only where there is a federal cause of action. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). The mere presence of a federal trademark issue does not, by itself, give rise to federal jurisdiction. *See id.* at 701; *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, there must be a substantial question of federal trademark law that is necessarily raised, such that federal trademark law "is a necessary element of one of the well-pleaded claims.'" *Duncan*, 76 F.3d at 1486 (cleaned up) (quoting *Christianson*, 486 U.S. at 809); *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."). Accordingly, the Court proceeds to discuss whether the Fifth Claim necessarily raises a federal issue and, if so, whether that federal issue is substantial.

### 2.  Whether a Federal Issue is Necessarily Raised

Although styled as a single claim for declaratory judgment, Superior Fence's Fifth Claim really asks a court to declare two legal propositions. The Fifth Claim states:

> Plaintiff seeks a judgment resolving this dispute, by declaring that [1] Plaintiff has common law trademark rights in the Portland Metro area in its Superior Fence Trademarks [2] that are prior and superior to any rights of Defendant to use any business name or mark in the Portland Metro area that include the words "Superior Fence."

---

[7] McGraw does not argue that any other claim for relief raises an issue of federal law.

ECF 1-1 at 150 ¶ 22.

The parties agree that the first part of the requested declaration does not necessarily raise a question of federal trademark law. *See* ECF 20 (Sept. 9, 2025 Hearing Transcript) at 47 (counsel for McGraw agreeing that "the rights would arise under state law."). Indeed, "federal law does not create trademarks." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). Because "a trademark is 'a common law property right that exists independently of [federal] statutory provisions for registration,'" a court need only apply Oregon and Washington law to determine the contours of Superior Fence's common law rights in the Portland Metro area. *See Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985) (quoting *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 926 (8th Cir. 1967)). A declaration of Superior Fence's common law trademark rights thus does not necessarily raise a question of federal law.

It is the second part, McGraw urges, that necessarily raises a federal question. There, Superior Fence requests that the court declare that the common law rights of Superior Fence are "prior and superior to any rights" held by McGraw. McGraw argues that, because one of its trademark rights is its license to use Lynx's federal trademark, and because any declaration of priority with respect to a federal trademark is controlled by the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, this portion of the declaration necessarily raises a federal question.

The Fifth Claim, however, does not mention Lynx's trademark, and the federal question must appear on the face of the plaintiff's complaint. *See Merrell Dow*, 478 U.S. at 808; *Duncan*, 76 F.3d at 1480 ("[I]t must be clear from the face of the plaintiff's well-pleaded complaint that there is a federal question."). McGraw argues that the federal question is on the

face of the complaint, because the fifth paragraph[8] of the Amended Complaint mentions Lynx's federal registration and McGraw's license. ECF 1-1, 141-42 ("Plaintiff has protectible common law trademark rights . . . that predate and are superior to . . . any rights Defendant may claim based on a third party's 2010 application for and registration of federal trademark registration no. 3,873,318 [Lynx's trademark] . . .."). That acknowledgment gives context and clarity to the Fifth Claim, McGraw argues, such that the phrase "any rights of Defendant" used in the requested declaration really refers to Lynx's registration. McGraw acknowledges, however, that Superior Fence's "intent to seek a judgment against the 2010 registration that's licensed to [McGraw] was really veiled" until the oral argument on August 4, 2025 that inspired McGraw to remove this case to federal court. *See* ECF 20 at 28.

If, as McGraw admits, Superior Fence's prerogative to attack McGraw's license is "veiled" in the Amended Complaint, paragraph five's reference to Lynx's federal trademark does not present a federal question that appears on the face of Superior Fence's complaint. Superior Fence may well have claims under the Lanham Act, but because it is the master of its complaint, it may nonetheless "ignore the federal question, assert only state claims, and defeat removal." *Duncan*, 76 F.3d at 1485. To that end, the Ninth Circuit has already established that "[a] complaint's mere mention of the existence of a protected trademark, without more, does not provide a basis for federal jurisdiction." *See id.* at 1488 n.11. This district court is bound by *Duncan*, and McGraw's argument about the fifth paragraph fails for that reason.

McGraw next argues that the declaration necessarily involves resolution of a federal question because "[t]he Court's authority to adjudicate whether [Lynx's federal registration] has

---

[8] McGraw's Response in Opposition to Superior Fence's Motion to Remand (ECF 14) cites paragraph six; the federal registration is not mentioned in this paragraph, so the Court assumes that McGraw is referring to paragraph five.

lost its statutory benefits . . . flows from the same statutes that grant those benefits." ECF 14, 10 (citing 15 U.S.C. §§ 1057(c), 1065). That argument presupposes that Lynx's federal registration is already an issue in the case, however, and as Superior Fence argues, the Amended Complaint does not attack Lynx's federal registration on its face—unless McGraw raises an affirmative defense based on that federal registration, it will not be an issue in the case. The Supreme Court mandates that "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *See Franchise Tax Bd. of Cal.*, 463 U.S. at 13. Lynx's federal registration cannot serve as the basis for removal unless Superior Fence's Complaint—not McGraw's affirmative defense—necessarily raises an issue about it.

In *Duncan*, the Ninth Circuit explained that "if a single state-law based theory of relief can be offered for [a] cause[ ] of action," resolution of a federal trademark law question is not necessary. 76 F.3d at 1486. Applying that principle here, there are several plausible state-law based theories of relief for Superior Fence's Fifth Claim. First, Superior Fence claims no rights under federal law in the Amended Complaint. Superior Fence correctly asserts that if McGraw raises no affirmative defenses under the Lanham Act, the Fifth Claim for relief will be resolved solely under state law. Second, if McGraw raises as an affirmative defense that it has a license to use Lynx's federal registration but fails to prove it, so too would any priority declaration be limited to the parties' respective state law rights. *See* Remand Mot. at 10-11. Thus, Superior Fence contends, a court could issue the declaration without deciding any questions of federal law, so there is no necessary federal question. *See Gunn*, 568 U.S. at 258; *Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990) ("The fact that an alternative theory of relief exists

for each claim alleged in the complaint, one not dependent upon federal law, is itself grounds to defeat federal question jurisdiction.").

McGraw resists this conclusion by arguing that the priority declaration nonetheless necessarily raises a federal question because "priority" is a concept unique to the Lanham Act and related federal common law. *See* ECF 1 at 13 ("[T]he right of priority sought . . . is controlled by federal statute and [federal] common law."). Indeed, "prior use" is part of a defense that common law trademark owners can raise to challenge the incontestability of a federally registered mark. *See, e.g.*, 15 U.S.C. § 1115(b)(5), (6) (both describing prior use). McGraw argues that the only reason Superior Fence would want a declaration of "prior" rights is to establish its defense under the Lanham Act in the *Lynx* lawsuit. In the Ninth Circuit, whether a party has "acquired ownership . . . through prior use in commerce is a fact-intensive inquiry that requires the [court] to evaluate the totality of the circumstances." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008). Because "the totality of the circumstances *must* be employed to determine whether a service mark has been adequately used in commerce so as to gain the protection of the Lanham Act," *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) (emphasis added), answering that question of federal law—*i.e.*, whether Superior Fence has established prior use under the totality of the circumstances test—is arguably necessary to issue Superior Fence's declaration.

Superior Fence responds that a court can declare priority without resort to federal law. In Superior Fence's view, priority refers simply to "who's first and second relative to each other," which is relevant to statutory trademark infringement in both states. *See* ECF 20 at 11-12. Thus, Superior Fence contends, a declaration that its trademark rights are "prior and superior" to McGraw's under Oregon and Washington law would state merely that its rights vested first.

The Court is skeptical that priority is a concept under Oregon and Washington *common law*, under which the declaration is requested. Moreover, the requested declaration has an extraterritorial effect, because it applies to the Portland Metro area (which encompasses parts of Oregon and Washington), and the Amended Complaint makes several "explicit reference[s] . . . to interstate commerce." *Duncan*, 76 F.3d at 1488 n.12; *see also id.* at 1488 ("A plaintiff in state court who wishes to stay there must carefully word the complaint to avoid tracking the language of Lanham Act § 43(a) and to avoid any reference to interstate usage by either plaintiff or defendant." (quoting 4 J. McCarthy, *Trademarks and Unfair Competition*, § 32.02(4)(c) (3d ed. 1995))). Superior Fence's use of terms of art from the Lanham Act, coupled with its requested extraterritorial priority status, creates a potential that the Fifth Claim necessarily raises a federal issue by requesting a remedy available only under the Lanham Act.

### 2. Whether the Federal Issue is Substantial

Ultimately, however, the Court need not decide whether the priority declaration necessarily raises a federal issue. Even if the issue of whether Superior Fence's prior use meets certain federal common law criteria as to defeat the incontestability of Lynx's federal registration is necessarily raised, that federal question is not "substantial" so as to justify the exercise of federal jurisdiction. "The substantiality inquiry . . . [looks] to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Importance to litigants, alone, is insufficient. *See id.* Rather, a federal question is substantial only if there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum" that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005).

"Virtually none of the factors suggesting a substantial federal question are present in this case." *CareCo, LLC v. Solorio*, 2024 WL 3202324, at *5 (C.D. Cal. June 26, 2024) (collecting

factors; holding that trademark disputes do not typically raise substantial questions of federal law). Determining whether Superior Fence or McGraw has "superior" trademark rights is a fact inquiry that would, at most, require the state court to apply Ninth Circuit trademark precedent. *See South v. Onpoint Comm. Credit, Union*, 2021 WL 2459466, at \*6 (D. Or. June 14, 2021) (finding insubstantial "fact-bound" federal issues that "would not be controlling in other cases").

Nor is there any strong federal interest present to prefer the use of a federal forum. Congress explicitly denied the federal courts exclusive jurisdiction over trademark questions. *See* 15 U.S.C. § 1116(a) (discussing the power of the "several courts vested with jurisdiction of civil actions arising under this chapter" as distinct from the "district court[s] of the United States"); *see also* 5 J. McCarthy, *Trademarks and Unfair Competition*, § 32:1 (5th ed. 2025) ("[A] plaintiff wishing to file suit for violation of a provision of the Lanham Act has a choice to sue on the claim in either federal or state court."). By contrast, Congress granted the federal courts exclusive jurisdiction in other federal intellectual property laws. *See* 28 U.S.C. § 1338(a) (establishing exclusive jurisdiction for patent and copyright claims). Although not dispositive of substantiality, Congress's unique grant of concurrent jurisdiction in the Lanham Act demonstrates that there is little, if any, federal interest in having trademark disputes litigated in federal forums. *See In re Circular Thermostat*, 2005 WL 2043022, at \*7 (N.D. Cal. Aug. 24, 2005) (explaining that substantiality arguments are weaker with respect to trademark as compared to patent or copyright because of statutory grants of jurisdiction). Indeed, the Supreme Court has recognized many times over that the Lanham Act was passed merely to "provide a degree of national uniformity" to the enforcement and recognition of preexisting common law rights. *See Matal v. Tam*, 582 U.S. 218, 224 (2017); *see also B&B Hardware*, 575 U.S. at 142.

Against this backdrop, the Court cannot say that applying federal common law to classify Superior Fence's and McGraw's respective trademark rights raises a substantial federal question necessitating a federal forum. Congress contemplated that state courts would hear cases just like this one, where state and federal trademark rights may clash. The Court's coexisting obligations to construe jurisdictional grants narrowly, exercise federal jurisdiction over state-law claims only when presented with the most substantial of federal issues, and remand upon any doubt point uniformly in one direction: remand is required. Because there is no substantial federal question in Superior Fence's Fifth Claim for Relief, there is no federal jurisdiction. *Duncan*, 76 F.3d at 1486. The Court must therefore grant Superior Fence's motion to remand. *See id.*; *see also Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 30 (2025).

## C. Costs and Expenses

Superior Fence seeks all just costs and expenses associated with McGraw's removal.[9] The Court may retain jurisdiction for the limited purpose of supervising fee-shifting. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Further, "district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

---

[9] Superior Fence "intends to seek this relief," but the Court decides the issue now to preserve the litigants' resources and to promote judicial efficiency.

The Court declines to grant costs and expenses. McGraw had an objectively reasonable basis for seeking removal, when the requested declaration used language from the Lanham Act and Superior Fence represented that it sought to "beat" Lynx's federal registration in the August 4th hearing. Although the Court ultimately finds that federal jurisdiction is wanting, it cannot say that McGraw's removal under these circumstances was unreasonable.

**CONCLUSION**

The Court GRANTS Superior Fence's Motion to Remand to State Court (ECF 11) and DENIES Superior Fence's request for costs and expenses under 28 U.S.C. § 1447(c). The Court directs the Clerk to return this case to Clackamas County Circuit Court.

**IT IS SO ORDERED**.

DATED this 17th day of September, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge